# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DANA R. BLICKLEY,**

            **Plaintiff,**

-vs-                                                         Case No. 6:08-cv-1866-Orl-31GJK

**JIM FORD, in his individual capacity, and
in his official capacity as Brevard County
Property Appraiser,**

            **Defendant.**

_____

# ORDER

This matter comes before the Court on the motions to dismiss (Doc. 24, 25) filed by the Defendant, Jim Ford ("Ford"), in his individual and official capacities, respectively, and the response (Doc. 30) filed by the Plaintiff, Dana Blickley ("Blickley").

Ford is the property appraiser for Brevard County, an elected position. Blickley worked in the property appraiser's office for 20 years. According to the allegations in the First Amended Complaint (Doc. 23), which are accepted as true for purposes of resolving these motions, on May 9, 2006, Ford called Blickley into a meeting and accused her of telling others that he was having an affair with another woman who worked in the same office. (Doc. 23 at 2-3). Blickley denied telling others about the affair, but she did acknowledge that she knew about it, and she "expressed disappointment to Ford regarding his behavior." (Doc. 23 at 3). She also told him that because of his absences from the office (stemming from the affair), her boss – Lance Larsen ("Larsen"), who

reported to Ford – was engaging in "poor management, including violations of law and ethics". (Doc. 23 at 3).

At some point, Ford's wife received an anonymous letter, informing her that he was having an affair. (Doc. 23 at 3). Blickley was not the person who sent the letter. (Doc. 23 at 3). However, based on the May 9 meeting, Ford became convinced that Blickley had sent it, and "he began to privately obsess and complain about Blickley's actual and imputed statements and to look for an ostensibly legitimate excuse to terminate her." (Doc. 23 at 3).

In October 2006, Blickley complained to Ford that Larsen's management tactics were creating a hostile working environment. (Doc. 23 at 3) Ford ordered an investigation, purportedly of Larsen, but actually as a device to target Blickley. (Doc. 23 at 4). As a result of the investigation, it was (incorrectly) determined that Blickley had been making racist and vulgar comments at work. (Doc. 23 at 4). In December 2006, Ford fired Blickley, purportedly because of the comments uncovered by the investigation, but actually because of "her statements to him during the May 9, 2006 conversation regarding her knowledge and opinion of his affair" and "his conclusion based thereon that Blickley was the author of the anonymous letter to his wife which exposed his affair". (Doc. 23 at 5).

Blickley contends that her termination violated her First Amendment right to freedom of speech, and she has sued Ford in both his official (Count I) and individual (Count II) capacities under 42 U.S.C. § 1983. Ford seeks dismissal of both counts on the grounds that Blickley has failed to state a claim and, in his individual capacity, on the basis of qualified immunity.

Public employees do not surrender all their First Amendment rights by reason of their employment. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). When assessing whether a public

employee's speech is entitled to constitutional protection, courts must employ a two-part analysis. First, the court must determine whether the employee spoke as a citizen on a matter of public concern. *Id.* at 418. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. *Id.* If the answer is yes, the possibility of a First Amendment claim arises, and the question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. *Id.*

During the May 9 meeting, Blickley complained to Ford that his absences were leading to problems in the property appraiser's office – specifically, Larsen's managerial issues. (Doc. 23 at 3). Such an allegation likely constitutes speech on a matter of public concern. However, as the First Amended Complaint now stands, Blickley does not contend that she was fired because of her complaints about Larsen's management or Ford's absences. Rather, she asserts that Ford fired her because of her comments "regarding her knowledge and opinion of his affair" and Ford's erroneous conclusion, based on this conversation, that Blickley "was the author of the anonymous letter to his wife." (Doc. 23 at 5).

The First Amendment affords no protection to speech that the employee did not actually utter. *See, e.g.*, *Nero v. Hospital Authority of Wilkes County*, 86 F.Supp.2d 1214, 1225 (S.D.Ga. 1998) (citing cases), *affirmed* 202 F.3d 288 (11th Cir. 1999). As a matter of law, to the extent that Blickley was fired because of a mistaken belief that she sent the anonymous letter, she has no constitutional claim. This leaves only her statements that she knew about and disapproved of Ford's affair. Such speech, standing alone, is not speech on a matter of public concern and cannot sustain a First Amendment claim.

Blickley does not assert that she was fired because of any speech that is entitled to First Amendment protection. As a result, the First Amended Complaint fails to state a Section 1983 claim. It is therefore

**ORDERED** that the motions to dismiss (Doc. 24, 25) are **GRANTED IN PART** and **DENIED IN PART**, as follows: Count I and Count II of the amended complaint (Doc. 23) are **DISMISSED WITHOUT PREJUDICE**. Blickley may file a second amended complaint on or before April 15, 2009. In all other respects, the motions are **DENIED**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 30, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party