**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DANA R. BLICKLEY,**

       **Plaintiff,**

-vs-                Case No. 6:08-cv-1866-Orl-31GJK

**JIM FORD, in his individual capacity, and
in his official capacity as Brevard County
Property Appraiser,**

       **Defendant.**

## ORDER

  This matter comes before the Court on motions to dismiss filed by Defendant Jim Ford ("Ford") in his official capacity (Doc. 33) and his individual capacity (Doc. 34), as well as the response (Doc. 37) filed by the Plaintiff, Dana Blickley ("Blickley").

  **I.**  **Background**

  The following assertions are taken from Blickley's Second Amended Complaint (Doc.32) and, except where noted, are accepted as true for purposes of resolving these motions to dismiss.

  Ford is the Property Appraiser for Brevard County, an elected position. (Doc. 32 at 1). Blickley worked in the Property Appraiser's office for more than 20 years, rising to the position of Director of Tax Rolls and CAMA Systems. (Doc. 32 at 2). In the spring of 2006, Blickley and others in the Property Appraiser's office noticed Ford spending his days with another office employee, Dawn Averill ("Averill"). (Doc. 32 at 3). They also noticed that the pair were entering and exiting the office within minutes of one another. (Doc. 32 at 3). Others in the office knew

that Averill was not working more than 10 hours a week in the office. (Doc. 32 at 3). In addition, although she lacked the necessary qualifications and experience, Averill was rapidly promoted to a senior management position. (Doc. 32 at 3).

On May 9, 2006, Ford called Blickley into a meeting and accused her of telling other people that he was having an affair with Averill. (Doc. 32 at 3). Blickley had not done so, and so informed Ford. However, she told him that she was aware of the affair, that she was disappointed in his behavior, which was having a "disruptive effect" on the office. (Doc. 32 at 3). She told him that Averill did not deserve the promotions and pay raises she had received, and that this was harming office morale. (Doc. 32 at 3-4). She told him that he and Averill were rarely in the office, that someone must be falsifying Averill's time sheets because she was not working anywhere near 40 hours a week, and that this special treatment was upsetting other employees. (Doc. 32 at 4). She also informed Ford that during his absences, Chief Deputy Property Appraiser Lance Larsen ("Larsen"), was mismanaging the office in various ways. (Doc. 32 at 4).

Some months later, Ford initiated an investigation that turned up allegations that Blickley had made racist and vulgar comments in the workplace. (Doc. 32 at 6). Ford terminated Blickley on December 19, 2006. (Doc. 32 at 6). Ostensibly, the racist and vulgar comments were the basis for the termination. However, Blickley contends that the real reason she was fired was because of the statements she made to Ford on May 9, 2006 as to "her knowledge and opinion of his affair with Averill" and the morale and management problems that affair led to within the Property Appraiser's office. (Doc. 32 at 6).

On November 4, 2008, Blickley filed the instant suit. In Count I of her Second Amended Complaint (Doc. 32), she asserts a Section 1983 claim against Ford in his official capacity for

violating her free speech rights – specifically, for terminating her for making statements that were protected by the First Amendment. In Count II, she asserts a similar claim against Ford in his individual capacity.

**II.     Standards**

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court must view the complaint in the light most favorable to the Plaintiff,. *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### III. Analysis[1]

First Amendment

It is well established that the state may not discharge an employee on a basis that infringes the employee's constitutionally protected interest in freedom of speech. *See*, *e.g.*, *Rankin v. McPherson*, 483 U.S. 378, 383 (1987). To determine whether a public employee's speech is entitled to First Amendment protection, the court must first determine whether the employee spoke as a citizen on a matter of public concern. . *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. *Id.*

Ford contends that Blickley has failed to state a claim for a violation of her First Amendment rights because the statements she made to him on May 6, 2006 were not entitled to First Amendment protection. Obviously, an allegation of waste and mismanagement of a public office, such as the Property Appraiser's office, would be a matter of public concern. However, when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes. *Garcetti* at 421. Ford contends that Blickley, as Director of Tax Rolls and CAMA Systems, was in a "high level supervisory position," with only Larsen and Ford above her in authority in the Property Appraiser's office. (Doc. 33 at 10). For this reason, according to Ford, her statements about the affair and its effects on the office

---

[1] In addition to the First Amendment and qualified immunity arguments addressed below, Ford argues that dismissal of Blickley's Second Amended Complaint is appropriate because it contradicts her earlier allegations as to the basis for her termination. Having reviewed the pertinent pleadings, the Court finds that Blickley's most recent description of that basis is a refinement of her earlier description, rather than a contradiction of it, not meriting dismissal.

constituted "speech within her professional responsibilities." (Doc. 33 at 10). Therefore, the argument continues, Blickley was not making the statements as a citizen, as required for them to be protected by the First Amendment.

There are a number of problems with this line of argument. First, at this early stage of the proceedings, the Court cannot determine what Blickley's professional responsibilities might have been. Blickley does not list them in the Second Amended Complaint.. The only information on this score available to the Court at this juncture is Blickley's assertion in the Second Amended Complaint that the statements were *not* made as part of her official duties. (Doc. 32 at 7). And even assuming that Blickley's responsibilities included the office morale and other issues she discussed with Ford, Ford cannot establish that Blickley had an obligation to *report* those problems to him. The problems she discussed with Ford on May 9, 2006 were clearly related to her job, but that is not enough, on its own, to establish that the statements were not entitled to First Amendment protection. The First Amendment protects some expressions related to the speaker's job. *Garcetti* at 421. Similarly, the First Amendment protects some expressions made by public employees in their offices, rather than in public. *Id.* at 420.

<u>Qualified Immunity</u>

In his individual capacity, Ford contends that his decision to terminate Blickley is shielded by qualified immunity. Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is an immunity from suit rather than a mere defense to liability, and it is effectively lost

if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Qualified immunity decisions should be resolved at earliest possible stage in the litigation. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (*per curiam*). Unless the plaintiff's allegations state a claim of violation of a clearly established constitutional right, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).

To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority. *Gonzalez v. Reno*, 325 F.2d 1228, 1234 (11th Cir. 2003). Once the defendants establish this, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate. *Id.* Blickley does not dispute Ford's contention that he was acting within his discretionary authority when he terminated her.

The Supreme Court has established a two-part test to determine whether qualified immunity should apply. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002). To resolve that inquiry, the Court must determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Gonzalez*, 325 F.3d at 1234. If so, the Court must then determine whether the right was "clearly established." *Id.*

The bulk of Ford's argument on this point is a recasting of his Rule 12(b)(6) argument, arguing in various ways that Blickley did not make the statements at issue in her capacity as a citizen, and therefore firing her on the basis of those statements would not constitute a violation of

-6-

her constitutional rights. That argument fails at this stage of the proceedings for the same reasons articulated above.

However, in *Garcetti*, the Supreme Court held that where a public employee's speech is entitled to First Amendment protection, the "question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti*, 547 U.S. at 419. Ford seizes on this passage to argue that Blickley's constitutional rights were not violated because he had justification for treating Blickley differently. He argues that Blickley's criticisms of her superiors (both Ford and Larsen) demonstrated "petty and personal bias" that "should not escape corrective action." (Doc. 34 at 13). This argument fails because it rests on the assumption that the statements were false, which cannot be established at this point.

Ford also contends that he was justified in treating Blickley differently because, as a public employer, he has a strong interest in curtailing such speech so as to promote the efficiency of the public services he is obligated to deliver. This can be a legitimate basis for impinging on a public employee's free speech rights. *See, e.g. Busby v. City of Orlando*, 931 F.2d 764, 774 (11th Cir. 1991) (holding that need for maintaining close working relationship in quasi-military organizations might justify restrictions on police officers' right to publicly complain about problems within the department). But there has been no showing in this case that Blickley's non-public statements undermined (or could have undermined) the efficiency of the Property Appraiser's office to the extent needed to overcome the protection of the First Amendment.

**IV. Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the motions to dismiss filed by Defendant Jim Ford in his official capacity (Doc. 33) and his individual capacity (Doc. 34) are **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 9, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party