**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DANA R. BLICKLEY,**

            **Plaintiff,**

-vs-                                                  Case No. 6:08-cv-1866-Orl-31GJK

**JIM FORD, in his individual capacity, and
in his official capacity as Brevard County
Property Appraiser,**

            **Defendant.**

## ORDER

This matter comes before the Court on the Motion for Partial Summary Judgment (Doc. 46) filed by the Defendant, Jim Ford ("Ford"), the response (Doc. 50) filed by the Plaintiff, Dana Blickley ("Blickley"), and the reply (Doc. 53) filed by Ford.

**I.    Background**

Ford is the Property Appraiser for Brevard County, an elected position. (Doc. 32 at 1). Blickley worked in the Property Appraiser's office for more than 20 years, rising to the position of Director of Tax Rolls and CAMA Systems. (Doc. 32 at 2). On May 9, 2006, Ford called Blickley into a meeting and accused her of telling other people that he was having an affair with another employee, Dawn Averill ("Averill"). (Doc. 32 at 3). Blickley denied having done so; however, she told him she knew he was having an affair with Averill and that she was disappointed in his behavior, which was having a "disruptive effect" on the office. (Doc. 32 at 3). According to Blickley, she told him that Averill did not deserve certain promotions and pay raises she had

received, that he and Averill were rarely in the office, that someone must be falsifying Averill's time sheets because she was not working anywhere near 40 hours a week, and that this special treatment was upsetting other employees. (Doc. 32 at 3-4). She also told Ford that during his absences, Chief Deputy Property Appraiser Lance Larsen ("Larsen") was mismanaging the office in various ways. (Doc. 32 at 4).

Some months later, Ford initiated an investigation that turned up allegations that Blickley had made racist and vulgar comments in the workplace. (Doc. 32 at 6). Ford terminated Blickley on December 19, 2006. (Doc. 32 at 6). Ford contends that the comments were the basis for the termination. Blickley contends that the real reason she was fired was because of the statements she made to Ford on May 9, 2006 about the alleged affair and the resulting morale and management issues.

On November 4, 2008, Blickley filed the instant suit. In Count I of her Second Amended Complaint (Doc. 32), she asserts a Section 1983 claim against Ford in his official capacity for violating her free speech rights – specifically, for terminating her for making statements that were protected by the First Amendment. In Count II, she asserts a similar claim against Ford in his individual capacity. By way of the instant motion, Ford seeks summary judgment as to Count II on the basis of qualified immunity.

## II. Standards

### A. Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**B.     Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is an immunity

from suit rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Qualified immunity decisions should be resolved at earliest possible stage in the litigation. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (*per curiam*). Unless the plaintiff's allegations state a claim of violation of a clearly established constitutional right, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001). Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in question in fact committed those acts. *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815.

To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority. *Gonzalez v. Reno*, 325 F.2d 1228, 1234 (11th Cir. 2003). Once the defendant establishes this, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate. *Id.* The Supreme Court has established a two-part test to determine whether qualified immunity should apply. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002). To resolve that inquiry, the Court must determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Gonzalez*, 325 F.3d at 1234. If so, the Court must then determine whether the right was "clearly established." *Id.* Finally, if any of the speech is protected by the First Amendment, the Court next applies a

balancing test, weighing the interests of the plaintiff as a citizen, in commenting upon matters of public concern, and the interest of the State as an employer, in promoting the efficiency of the public services it performs through its employees. *Pickering v. Bd. of Education*, 391 U.S. 563, 568 (1968).

**III.     Analysis**

Blickley does not dispute that Ford was acting within his discretionary authority when he terminated her. (Doc. 50 at 2-3). Thus, the burden is on Blickley to show that qualified immunity is not appropriate here. As this case is at the summary judgment stage, the Court must determine whether Blickley has created a genuine issue as to whether Ford violated a clearly established constitutional right.

It is clearly established that the state may not discharge an employee on a basis that infringes the employee's constitutionally protected interest in freedom of speech. *See*, *e.g.*, *Rankin v. McPherson*, 483 U.S. 378, 383 (1987). To determine whether a public employee's speech is entitled to First Amendment protection, the court must first determine whether the employee spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. *Id.* "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. However, neither the fact that the statements are made at the office, rather than in public, or that they concern the subject of the employee's job is dispositive of the issue. Such statements may

still qualify for First Amendment protection. *Id.* Rather, the controlling factor in such circumstances is whether the expressions were made pursuant to the employee's official duties. *Id.*

### A. Matter of Public Concern

According to Blickley's affidavit, during the May 9 meeting she advised Ford, among other things, that the (alleged) favoritism he was showing toward Averill was having a disruptive effect on the office (Doc. 50-2 at 9) and that, while he was out of the office with Averill, the office was being run by his Chief Deputy, Larsen, who had a history of misconduct and mismanagement (Doc. 50-2 at 10). Ford contends that Blickley's comments during the May 9 meeting "were almost entirely focused on Plaintiff's frustration at having to deal with Larsen's management style and actions because Ford was unavailable to act as a buffer allegedly due to his affair." (Doc. 46 at 7). In effect, Ford is arguing that the Blickley's comments during the meeting were primarily in relation to her personal problems with Larsen rather than a matter of public concern, and therefore the comments were not entitled to First Amendment protection. According to Blickley's affidavit, however, the meeting primarily concerned the alleged affair and its affect on the office, with Larsen's management issues being discussed only during a short segment of the meeting. An attempt to remedy deteriorating morale and increasing inefficiency at the Property Appraiser's office would appear to be a matter of public concern. *See Garcetti* at 425 (stating that "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance."). Thus there is, at the least, a disputed issue of material fact on this point. In addition, so long as the statements for which Blickley was terminated concerned the morale and efficiency issues, it would not matter that purely personal matters were discussed at other points during the meeting.

### B. Citizen or Employee

Ford offers a number of arguments in support of the notion that when Blickley made the comments at issue, she did so in her capacity as a public employee rather than as a private citizen. As Blickley points out, her explicit job responsibilities (Doc. 50-3) did not include oversight of office morale, or anything similar that would require her to report to Ford on the topics discussed during the May 9 meeting. Ford points to the BCPA Code of Ethics which provides, in relevant part, that "All deputies have an obligation to advise the Property Appraiser of any unethical, illegal or improper conduct by another deputy. In doing so, the deputy will be immune from any retaliatory actions should the alleged deputy be in a position to affect same." (Doc. 46-4 at 107). Ford contends that because of this Code, Blickley's job responsibilities included informing him of the alleged favoritism toward Averill. However, according to her affidavit, Blickley's statements during that meeting primarily concerned allegations of improper behavior by Ford himself, rather than conduct "by another deputy," as the quoted passage requires. In addition, to the extent the allegations regarding the affair and the favoritism toward Averill were true, Ford was already aware of them. There would have been no need for Blickley to "advise" Ford of them. And to the extent the statements concerned the effect of the conduct on office morale or efficiency (rather than the conduct itself), they would not have been subject to the Code.

Along the same lines, Ford argues that Blickley admitted that she was obligated to report her allegations regarding the alleged affair and its affect on the office. Ford relies on testimony Blickley gave in another case, in which she stated:

> I think that your responsibility as a Director is to the organization and to the taxpayers. I don't think it's to the personal whims of any individual there. I think that if it means going along with relationship or management decisions that are

> adverse to the organization, I don't feel that's the proper thing to do. I don't think [the BCPA's Code of Ethics] promotes that either.
>
> . . . .
>
> I think the other Directors should have, if they felt that decisions were being made that were adverse to the organization, I felt like they should have been vocal about them. It was their responsibility to be administrators.

It may be possible to read this as an assertion by Blickley that every Director had, as part of his or her job responsibilities, an obligation to go to Ford every time they saw something that was harming the office. However, that is far from the only possible interpretation. Saying that someone "should" do something about problems they see at work is a far cry from saying the person's job responsibilities include doing something about the problem. And, in any event, Blickley saying what other directors should have done about the problems they encountered is not an admission by Blickley as to what she was obligated to do about the problems she perceived. The Court finds that there is a genuine issue of fact as to whether Blickley's official job responsibilities included making statements to Ford such as the ones she made at the May 9 meeting.

### C. Clearly Established Law

Finally, Ford attempts to argue that the law on this point was not clearly established at the time of Blickley's termination. However, this argument relies on a characterization of Blickley's speech as "complaints relating to difficulties with workplace issues resulting from the top manager's absence, and particularly relating to her own supervisor's 'management tactics'". (Doc. 46 at 23). As noted above, there is an issue of material fact as to whether this is an accurate description of Blickley's comments during the May 9 meeting, or whether they are more properly

characterized as an attempt by Blickley to correct misconduct and inefficiency. At the time Blickley was terminated, the law was clearly established that comments in the second category could be entitled to First Amendment protection.

**IV. Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Partial Summary Judgment (Doc. 46) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 14, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party